**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| WHIRLPOOL CORP.,<br><br>Plaintiff,<br><br>v.<br><br>MIDEA GROUP CO., LTD.;<br>MIDEA AMERICA CORP.,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL** |

Plaintiff Whirlpool Corp. ("Whirlpool" or "Plaintiff") brings this Complaint against Defendants Midea Group Co., Ltd. and Midea America Corp. (collectively, "Midea" or "Defendants"), alleging as follows:

## NATURE OF ACTION

1. As alleged below, this is an action for patent infringement based on Midea's unlawful use of Whirlpool's patents directed to low-profile microwave hood combination products. Midea copied Whirlpool's award-winning design, and its misconduct has caused Whirlpool significant damage and irreparable harm.

## THE PARTIES

2. Plaintiff Whirlpool Corp. is a Delaware corporation having its principal place of business located at 2000 North M-63, Benton Harbor, Michigan 49022.

3. Defendant Midea Group Co., Ltd. ("Midea Group") is a Chinese corporation having its principal place of business located at the Midea Headquarters Building, No. 6 Midea Avenue, Beijiao Town, Shunde District, Foshan City, Guangdong Province, China 528311.

4. Defendant Midea America Corp. ("Midea America") is a Florida corporation having its principal place of business located at 5 Sylvan Way, Suite 100, Parsippany, NJ 07054. On information and belief, Midea America is a wholly owned subsidiary of Midea Group.

**JURISDICTION AND VENUE**

5. This is a civil action for patent infringement under 35 U.S.C. § 271 *et seq*.

6. This Court has subject matter jurisdiction over this action under the laws of the United States, 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has general personal jurisdiction over Midea because Midea is engaged in substantial and not isolated activity within this judicial district. This Court has specific jurisdiction over Midea because Midea has committed acts giving rise to this action and has established more than minimum contacts within this judicial district, such that the exercise of jurisdiction over Midea in this Court would not offend traditional notions of fair play and substantial justice. Midea has also placed infringing products into the stream of commerce by shipping those products into the Eastern District of Texas ("this District") or knowing that the products would be shipped there.

8. Venue is proper in this District under 28 U.S.C. §§ 1391(b)–(c) and 1400(b) for Midea Group, a Chinese company, because suits against foreign entities are proper in any judicial district.

9. Venue is proper as to Midea America because Midea America has a regular and established place of business and has committed acts of patent infringement within this District. Midea America has multiple facilities in Texas, including at least one within this District, located at 1501 10th Street, Suite 130, Plano, TX 75074 and 5525 Granite Parkway, Suite 1300, Plano, TX

75024.[1] Midea America is registered to do business in the State of Texas under Tax Identification No. 32034611759. Midea America's website also connects users to Midea products through a "Where to buy" feature, which identifies retail stores carrying Midea products within this District.[2]




10. On information and belief, Midea Group and Midea America coordinate with respect to the development, marketing, sale, importation and/or distribution of Midea products. On information and belief, Midea Group and Midea America are agents of one another and/or operate in concert as integrated parts of the same business group and enter into agreements with each other that are nearer than arm's length. Upon information and belief, Midea America acts at the direction, and for the benefit, of Midea Group, and is controlled and/or dominated by Midea Group. Upon information and belief, Midea Group and Midea America work collaboratively and in concert either directly or indirectly through one or more of their wholly owned subsidiaries with respect

---

[1] *See, e.g.*, https://www.mideacomfort.us/support.html

[2] *See* https://www.midea.com/us/store/microwaves/over-the-range/midea-over-the-range-microwave.mmo12s3ast (last visited Oct. 29, 2026).

to the manufacturing, marketing, sale, and distribution of Midea products, including the Accused Products, throughout the United States, including in this District.

## FACTUAL BACKGROUND

### Whirlpool's Background

11. Whirlpool is a leading home appliance company dedicated to improving customers' quality of life at home through efficient, reliable, and innovative appliances.[3] As the only major manufacturer of kitchen and laundry appliances based in the United States, Whirlpool made nearly 90% of its 2025 sales in the Americas.[4]

12. Among its areas of specialty, Whirlpool designs and manufactures kitchen appliances, including low-profile microwave hood combination products ("LP-MHCs"). LP-MHCs are designed to fit into the undercabinet hood space above a cooking range, providing a two-in-one kitchen appliance that cooks and provides ventilation.[5] Compared to their traditional counterparts, LP-MHCs have significantly scaled-down overall vertical dimensions, allowing their installation in areas that previously could only accommodate a standalone ventilation hood. The benefit of this compact design is preserved through an LP-MHC's robust air circulation of byproducts produced when using the cooking range below (e.g., smoke or grease). An LP-MHC's space-saving properties save countertop space without sacrificing performance, providing users with an efficient and innovative dual-function kitchen appliance.

13. The below images show certain of the components for an exemplary Whirlpool LP-MHC (Model No. WMML5530RZ):

---

[3] *See* https://www.whirlpoolcorp.com/our-company.html (last visited Oct. 26, 2026).

[4] *Id.*

[5] https://www.whirlpool.com/blog/kitchen/what-is-a-low-profile-microwave.html (last visited Oct. 26, 2026).


Whirlpool




241030 P4
AUTOMÁTICAMENTE. PARA REDUCIR EL RIESGO DE LESIONES, DESCONECTE LA CORRIENTE ELÉCTRICA ANTES DE REALIZAR TAREAS DE SERVICIO.

14. Whirlpool's LP-MHCs created a new, first-to-market category of MHCs, which had a significant impact on the cooking appliance industry and has enjoyed enormous commercial success. Whirlpool's creation of the LP-MHC product category was publicized in the industry and earned Whirlpool a 2019 iF Design Award.[6]

15. Whirlpool has also been awarded numerous patents for its innovative LP-MHCs, including the patents identified herein. Whirlpool's products practice the claims of those patents.

**Accused Products and Activities**

16. Commercial success and patenting are often accompanied by copying from competitors. That is the case here. Indeed, subsequent to Whirlpool's product launch, Midea launched a line of copycat products that practice the Asserted Patents. Midea's website even references the "low profile" design of LP-MHCs, a term coined by Whirlpool after conducting market research:[7]




17. Midea's infringing products include at least the following Stock Keeping Unit ("SKU"): MMO12S3AST (the "Accused Products").

18. The below images show certain of the components for an exemplary Accused Product (SKU No. MMO12S3AST), which constitutes a LP-MHC.

---

[6] https://www.prnewswire.com/news-releases/whirlpool-corporations-innovative-design-wins-big-at-if-design-awards-300813555.html (last visited Oct. 26, 2026).

[7] https://www.midea.com/us/store/microwaves/over-the-range/midea-over-the-range-microwave.mmo12s3ast (last visited Oct. 29, 2026).







**THE ASSERTED PATENTS**

19. On August 3, 2021, the United States Patent and Trademark Office ("PTO") issued United States Patent No. 11,079,118 ("the '118 patent"), titled "Combination Microwave and Hood System." The '118 patent lists the following individuals as inventors: Owen Zhang, Michael Ledford, Stephen Zheng, and Xiangxu Liu. The '118 patent is valid and enforceable. A copy of the '118 patent is attached as Exhibit A. Whirlpool is the owner of the '118 patent by written assignment. Whirlpool thus has standing to bring suit for infringement of the '118 patent. The Accused Products are accused of infringing the '118 patent.

20. On October 13, 2026, the PTO issued United States Patent No. 12,764,837 ("the '837 patent"), titled "Combination Microwave and Hood System." The '837 patent lists the following individuals as inventors: Owen (XunCai) Zhang, Michael A. Ledford, Stephen Zheng, and Xiangxu Liu. The '837 patent is valid and enforceable. A copy of the '837 patent is attached as Exhibit B. Whirlpool is the owner of the '837 patent by written assignment. Whirlpool thus has standing to bring suit for infringement of the '837 patent. The Accused Products are accused of infringing the '837 patent.

21. On November 3, 2026, the PTO issued United States Patent No. 12,787,131 ("the '131 patent"), titled "Combination Microwave and Hood System." The '131 patent lists the following individuals as inventors: Owen (XunCai) Zhang, Michael A. Ledford, Stephen Zheng, and Xiangxu Liu. The '131 patent is valid and enforceable. A copy of the '131 patent is attached as Exhibit C. Whirlpool is the owner of the '131 patent by written assignment. Whirlpool thus has standing to bring suit for infringement of the '131 patent. The Accused Products are accused of infringing the '131 patent.

22. Whirlpool has complied with the marking requirements under 35 U.S.C. § 287 such that Whirlpool is entitled to collect past damages for infringement of the Asserted Patents. Whirlpool's LP-MHCs practice the Asserted Patents, and Whirlpool's practicing products have been marked with the Asserted Patent numbers.

**COUNT I**

**(Infringement of U.S. Patent No. 11,079,118)**

23. Whirlpool realleges and incorporates by reference, as if fully set forth herein, all of the allegations contained in paragraphs 1–22 of this Complaint.

24. Upon information and belief, Midea makes, uses, imports, offers for sale, and/or sells in the United States the Accused Products that directly infringe at least claim 6 of the '118 patent, under 35 U.S.C. § 271(a).

25. The explanation below shows how the Accused Products directly infringe asserted independent claim 6 of the '118 patent. Plaintiff analyzes only MMO12S3AST herein as a representative of other Midea LP-MHC products that may later become known to Plaintiff in discovery.

26. To the extent the preamble is limiting, each Accused Product comprises "[a]n external enclosure for a combined ventilation hood and microwave oven system." The

MMO12S3AST is an over-the-range combination microwave oven and ventilation hood that is designed to mount beneath cabinetry above a cooking range, and it includes an external enclosure that encases the microwave oven and ventilation components.[8]




27. Each Accused Product comprises "an outer wrapper including a top surface and two side portions." The external enclosure of the MMO12S3AST includes an outer wrapper that has a top surface extending between a first side portion and a second side portion. The below images show the MMO12S3AST both with (front view) and without (rear view) the outer wrapper and rear plate.

[8] https://www.midea.com/us/store/microwaves/over-the-range/midea-over-the-range-microwave.mmo12s3ast (last visited Oct. 29, 2026).





28. Each Accused Product comprises an outer wrapper "wherein the outer wrapper has a plurality of air passages defined thereon including a cooling air inlet, a cooling air outlet, and at least one recirculation vent outlet." The top surface of the MMO12S3AST's outer wrapper has a plurality of air passages defined thereon, including a cooling air inlet located on the front right side of the top surface, a cooling air outlet located on the front left side of the top surface, and a plurality of recirculation vent outlets located along the front edge of the top surface between the cooling air inlet and the cooling air outlet. The recirculation vent outlets are openings, separate from the outside vent outlet, through which the hood fan expels exhaust air that it draws in through the vent inlets on the bottom of the product. The below image shows the four air passages on the top surface of the outer wrapper.



29. In each Accused Product, "the cooling air inlet is in fluid communication with the cooling air outlet." In the MMO12S3AST, a cooling fan draws air in through the cooling air inlet, directs that air across the cooking components and through the cooking cavity, and expels the air through the cooling air outlet. The cooling air inlet and the cooling air outlet are therefore in fluid communication with one another.

30. In each Accused Product, "the top surface defines an outside vent outlet." The top surface of the MMO12S3AST's outer wrapper defines an outside vent outlet located at the rear edge of the top surface, through which exhaust air is expelled to an outside area when the product operates in an outside venting mode. The outside vent outlet is covered when the product operates in a recirculation mode. The below image shows the MMO12S3AST's outside vent outlet covered with a silver plate.



31. Each Accused Product comprises "a door." The MMO12S3AST includes a front door that is operable to open and close to provide access to, and enclose, the cooking cavity.

32. Each Accused Product comprises "a rear plate." The external enclosure of the MMO12S3AST includes a rear plate that forms the rear of the external enclosure.

33. Each Accused Product comprises "a base plate defining at least one vent inlet." The bottom of the MMO12S3AST's external enclosure is formed by a base plate that defines at least one vent inlet through which contaminated exhaust air rising from the cooking range below is drawn into the product by the hood fan. The below image shows a bottom view of the MMO12S3AST, including multiple vent inlets on the base plate.



34. In each Accused Product, "the at least one vent inlet is in fluid communication with the at least one recirculation vent outlet and the outside vent outlet." In the MMO12S3AST, the hood fan draws contaminated air through the vent inlets on the base plate and routes that air through the interior of the external enclosure. In recirculation mode, the hood fan expels that air vertically through the recirculation vent outlets along the front edge of the top surface. In outside venting mode, the hood fan expels that air vertically through the outside vent outlet at the rear edge of the top surface. The vent inlets are therefore in fluid communication with both the recirculation vent outlets and the outside vent outlet.

35. Accordingly, each Accused Product meets every limitation of claim 6 of the '118 patent, either literally or, in the alternative, under the doctrine of equivalents, because any difference between the claimed structure and the Accused Products is insubstantial, and the Accused Products perform substantially the same function, in substantially the same way, to achieve substantially the same result.

36. Upon information and belief, Midea currently actively induces and has induced infringement of the '118 patent pursuant to 35 U.S.C. § 271(b) through, among other things,

actively encouraging others to make, use, import, offer for sale, and/or sell in this judicial district and elsewhere in the United States the Accused Products.

37. For example, Midea actively promotes the sale, use, and importation of the Accused Products in marketing materials, product manuals, and web pages on its website,[9] and through its sales and distribution channels that encourage infringing sales, offers to sell, and importation of the Accused Products.

38. Upon information and belief, Midea has had knowledge of the '118 patent and that the Accused Products infringe the asserted claim(s) of the '118 patent since at least the November 18, 2025 filing of a related complaint with the International Trade Commission that involved the '118 patent and named Midea as parties (the "ITC Proceeding"). Midea also had knowledge of its infringement of at least claim 6 of the '118 patent by no later than May 1, 2026, when Whirlpool filed a motion in the ITC Proceeding to add allegations of infringement of claim 6 (and other claims) against Midea. Further, contemporaneously with the filing of this Complaint, Whirlpool provided Midea with a copy of the Complaint and exhibits to the Complaint. As a result, Midea received notice of the '118 patent and the infringement at issue no later than the filing of the ITC Complaint, the May 1, 2026 motion in the ITC Proceeding, and/or the filing of this Complaint. By the time of trial, Midea will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce the infringement of the '118 patent.

39. Upon information and belief, Midea's infringement of the '118 patent has been and continues to be willful.

---

[9] *See, e.g.*, https://www.midea.com/us/store/microwaves/over-the-range/midea-over-the-range-microwave.mmo12s3ast (last visited Oct. 29, 2026); https://www.midea.com/content/dam/midea-aem/us/microwaves/mmo12s3ast-/MMO12S3AST-User-Manual.pdf (product manual for MMO12S3AST) (last visited Oct. 29, 2026).

40. Upon information and belief, Midea knew of the ’118 patent or was willfully blind to its existence.

41. Midea’s infringement of the ’118 patent has been without permission, consent, authorization, or license from Whirlpool.

42. As a result of Midea’s infringement, Whirlpool has suffered and will continue to suffer damages, including past damages, in an amount to be proved at trial. In addition, Midea’s infringement caused and will continue to cause Whirlpool irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

## COUNT II

### (Infringement of U.S. Patent No. 12,764,837)

43. Whirlpool realleges and incorporates by reference, as if fully set forth herein, all of the allegations contained in paragraphs 1–42 of this Complaint.

44. Upon information and belief, Midea makes, uses, imports, offers for sale, and/or sells in the United States the Accused Products that directly infringe at least claims 1 and 31 of the ’837 patent, under 35 U.S.C. § 271(a).

45. The explanation below shows how the Accused Products directly infringe asserted independent claims 1 and 31 of the ’837 patent. Plaintiff analyzes only MMO12S3AST herein as a representative of other Midea LP-MHC products that may later become known to Plaintiff in discovery.

46. Claim 1: To the extent the preamble is limiting, each Accused Product is "[a] microwave oven." The MMO12S3AST is an over-the-range combination microwave oven and ventilation hood that cooks food using microwaves.[10]




47. Each Accused Product comprises "an external enclosure including: a first side portion." The MMO12S3AST has an external enclosure that encases the appliance, and that enclosure includes a first (right) side portion. The below image shows the first side portion of the external enclosure.[11]



[10] https://www.midea.com/us/store/microwaves/over-the-range/midea-over-the-range-microwave.mmo12s3ast (last visited Oct. 29, 2026).

[11] *Id.*

48. The external enclosure of each Accused Product includes "a second side portion." The external enclosure of the MMO12S3AST includes a second (left) side portion. The below image shows the second side portion of the external enclosure.[12]



49. The external enclosure of each Accused Product includes "a top portion extending from the first side portion to the second side portion." The external enclosure of the MMO12S3AST includes a top portion that extends between its right and left side portions. The below image shows the top portion of the external enclosure, which extends from the first side portion to the second side portion.



[12] *Id.*

50. The external enclosure of each Accused Product includes "a bottom portion extending from the first side portion to the second side portion and including a bottom surface, corners of the bottom surface defining a horizontal plane." The external enclosure of the MMO12S3AST includes a bottom portion extending between its right and left side portions. The bottom portion includes a flat bottom surface whose corners define a horizontal plane. The below image shows the bottom portion of the external enclosure of the MMO12S3AST, which extends from the first side to the second side.



51. The external enclosure of each Accused Product includes "a rear portion extending from the first side portion to the second side portion." The external enclosure of the MMO12S3AST includes a rear portion (rear plate) that extends between its right and left side portions and forms the rear of the enclosure.

52. The external enclosure of each Accused Product includes "a door." The MMO12S3AST includes a front door.

53. Each Accused Product comprises "an air filter disposed at the bottom surface, wherein a planar extent of the air filter is at or above the horizontal plane." The MMO12S3AST

includes an air filter (grease filter) disposed at the bottom surface of the external enclosure over the vent inlets. The filter is recessed within, or flush with, the bottom surface such that its planar extent is at or above the horizontal plane defined by the corners of the bottom surface. The below image from Midea's website shows the bottom of the MMO12S3AST and air filters disposed at the bottom surface.[13]




54. Each Accused Product comprises "a cooking cavity located within the external enclosure, wherein the door is operable to enclose the cooking cavity." The MMO12S3AST has a cooking cavity located inside the external enclosure, and the door closes to fully enclose the

[13] *Id.*

cooking cavity. The below image from Midea's website shows the MMO12S3AST's door open, revealing the cooking cavity behind.[14]



55. Each Accused Product comprises "a cooking component located inside the external enclosure and outside the cooking cavity." The MMO12S3AST includes cooking components, including the components for generating microwaves and propagating them into the cooking cavity, located inside the external enclosure and outside the cooking cavity. The below image of the MMO12S3AST shows various cooking components located at the right side of the microwave between the cooking cavity and the first side portion of the external enclosure.



[14] *Id.*

56. Each Accused Product comprises "at least one vent outlet." The MMO12S3AST has multiple vent outlets, including recirculation vent outlets located along the front edge of the top portion and an outside vent outlet located at the rear edge of the top portion. The below image shows the recirculation vent outlets and the outside vent outlet, which is covered by a silver plate.



57. Each Accused Product comprises "at least one vent inlet located on the bottom surface of the external enclosure, wherein the air filter extends across the at least one vent inlet." The bottom surface of the MMO12S3AST's external enclosure includes at least one vent inlet, and the air filter extends across that vent inlet. The below image shows the MMO12S3AST's bottom surface, which includes multiple vent inlets with recessed or flush air filters extending across.




58. Each Accused Product comprises "at least one hood fan located inside the external enclosure, wherein the at least one hood fan is configured to: draw ventilation air through the at least one vent inlet from an area below the external enclosure." The MMO12S3AST has a hood fan located inside the external enclosure. The hood fan is oriented and positioned to draw ventilation air, such as smoke and grease-laden air rising from the cooktop below, up through the vent inlets on the bottom surface of the enclosure. The below image shows the MMO12S3AST's hood fan located between the cooking cavity and the rear portion of the external enclosure (removed).



59. The at least one hood fan of each Accused Product is configured to "expel the ventilation air through the at least one vent outlet." In the MMO12S3AST, the hood fan is oriented and positioned to expel the ventilation air through the recirculation vent outlets in recirculation mode, and through the outside vent outlet in outside venting mode.

60. Each Accused Product comprises "a cooling air inlet." The MMO12S3AST has a cooling air inlet on the front right side of the top portion.

61. Each Accused Product comprises "a cooling air outlet in fluid communication with the cooling air inlet." The MMO12S3AST has a cooling air outlet on the front left side of the top portion. Air drawn in through the cooling air inlet passes through the interior of the product, including through the cooking cavity, and is expelled through the cooling air outlet. The cooling air inlet and the cooling air outlet are therefore in fluid communication.

62. Each Accused Product comprises "a cooling fan in fluid communication with the cooling air inlet and the cooling air outlet." The MMO12S3AST includes a cooling fan that draws air through the cooling air inlet, directs it across the cooking components and through the cooking cavity, and expels it through the cooling air outlet. The cooling fan is therefore in fluid communication with both the cooling air inlet and the cooling air outlet. The below image shows

the cooling fan in white located between the cooking cavity and the first side portion of the external enclosure.



63. In each Accused Product, "each of the cooling fan, the at least one hood fan, and the cooking component is located between at least one vertical surface of the external enclosure and the cooking cavity." In the MMO12S3AST, the cooling fan and the cooking components are located in the space between the exterior of the cooking cavity and a vertical side surface of the external enclosure. The hood fan is located in the space between the cooking cavity and the vertical rear surface of the external enclosure. The below images show the cooling fan and the cooking components located between the cooking cavity and the first side portion of the external enclosure (removed) and the at least one hood fan between the cooking cavity and the rear surface of the external enclosure (removed).

 

64. In each Accused Product, "each of the cooling fan, the at least one hood fan, and the cooking component is located above the air filter and below each of the cooling air outlet and the at least one vent outlet." In the MMO12S3AST, the cooling fan, hood fan, and cooking component are each located above the air filter at the bottom surface of the enclosure, and below the cooling air outlet and the vent outlets, which are defined in the top portion of the external enclosure.

65. Accordingly, each Accused Product meets every limitation of claim 1 of the '837 patent, either literally or, in the alternative, under the doctrine of equivalents, because any difference between the claimed structure and the Accused Products is insubstantial, and the Accused Products perform substantially the same function, in substantially the same way, to achieve substantially the same result.

66. <u>Claim 31</u>: Each Accused Product also meets every limitation of independent claim 31 of the '837 patent. Claim 31 recites the same preamble and the same limitations as claim 1, except as to (i) the hood fan being configured to draw and expel ventilation air "vertically," and (ii) the final "wherein" clause. Each limitation of claim 31 that is identical to a limitation of claim 1 is met for the reasons set forth in paragraphs 46–65 above, which are incorporated by reference.

67. The at least one hood fan of each Accused Product is configured to "draw ventilation air vertically through the at least one vent inlet from an area below the external

enclosure." As set forth in paragraph 58, the hood fan of the MMO12S3AST draws ventilation air through the vent inlets on the bottom surface of the enclosure from the cooktop area below. Because the vent inlets face downward on the horizontal bottom surface, and because the hood fan is oriented and positioned to draw air through the vent inlets, the ventilation air is drawn vertically upward through the at least one vent inlet from an area below the external enclosure.

68. The at least one hood fan of each Accused Product is configured to "expel the ventilation air vertically through the at least one vent outlet." As set forth in paragraph 59, the hood fan of the MMO12S3AST expels ventilation air through the vent outlets on the top surface of the enclosure. Because the recirculation vent outlets and outside vent outlet face upward on the horizontal top surface, and because the hood fan is oriented and positioned to expel air through the vent outlets, the ventilation air is expelled vertically upward through the recirculation vent outlets in recirculation mode and the outside vent outlet in outside venting mode.

69. In each Accused Product, "each of the cooling fan, the at least one hood fan, and the cooking component is located between at least one vertical surface of the external enclosure and the cooking cavity, and . . . each of the cooling fan, the at least one hood fan, and the cooking component is located above the air filter and below the cooling air inlet." As set forth in paragraphs 63–64, the cooling fan, hood fan, and cooking component of the MMO12S3AST are each located between a vertical surface of the external enclosure and the cooking cavity, and above the air filter. Each of these components is also located below the cooling air inlet, which is defined in the top portion of the external enclosure.

70. Accordingly, each Accused Product meets every limitation of claim 31 of the '837 patent, either literally or, in the alternative, under the doctrine of equivalents, because any difference between the claimed structure and the Accused Products is insubstantial, and the

Accused Products perform substantially the same function, in substantially the same way, to achieve substantially the same result.

71. Upon information and belief, Midea currently actively induces and has induced infringement of the ’837 patent pursuant to 35 U.S.C. § 271(b) through, among other things, actively encouraging others to make, use, import, offer for sale, and/or sell in this judicial district and elsewhere in the United States the Accused Products.

72. For example, Midea actively promotes the sale, use, and importation of the Accused Products in marketing materials, product manuals, and web pages on its website, and through its sales and distribution channels that encourage infringing sales, offers to sell, and importation of the Accused Products.

73. Upon information and belief, Midea has had knowledge of the ’837 patent and that the Accused Products infringe the asserted claims of the ’837 patent and learned of this at least from the filing of this Complaint. Contemporaneously with the filing of this Complaint, Whirlpool provided Midea with a copy of the Complaint and exhibits to the Complaint. As a result, Midea received notice of the ’837 patent and the infringement at issue no later than the filing of the Complaint. By the time of trial, Midea will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce the infringement of the ’837 patent.

74. Upon information and belief, Midea’s infringement of the ’837 patent has been and continues to be willful.

75. Upon information and belief, Midea knew of the ’837 patent or was willfully blind to its existence.

76. Midea’s infringement of the ’837 patent has been without permission, consent, authorization, or license from Whirlpool.

77. As a result of Midea's infringement, Whirlpool has suffered and will continue to suffer damages, including past damages, in an amount to be proved at trial. In addition, Midea's infringement caused and will continue to cause Whirlpool irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

**COUNT III**

**(Infringement of U.S. Patent No. 12,787,131)**

78. Whirlpool realleges and incorporates by reference, as if fully set forth herein, all of the allegations contained in paragraphs 1–77 of this Complaint.

79. Upon information and belief, Midea makes, uses, imports, offers for sale, and/or sells in the United States the Accused Products that directly infringe at least claim 1 of the '131 patent, under 35 U.S.C. § 271(a).

80. The explanation below shows how the Accused Products directly infringe asserted independent claim 1 of the '131 patent. Plaintiff analyzes only MMO12S3AST herein as a representative of other Midea LP-MHC products that may later become known to Plaintiff in discovery.

81. To the extent the preamble is limiting, each Accused Product is "[a] microwave hood combination appliance." The MMO12S3AST is an over-the-range combination microwave oven and ventilation hood that cooks food using microwaves.[15]

[15] https://www.midea.com/us/store/microwaves/over-the-range/midea-over-the-range-microwave.mmo12s3ast (last visited Oct. 29, 2026).




82. Each Accused Product comprises "an external enclosure including a front surface, a rear surface, a top surface, a bottom surface, and first and second side surfaces." The MMO12S3AST has an external enclosure that includes a front surface, a rear surface (the rear plate), a top surface, a bottom surface, and left and right side surfaces. The below images show the first side surface (top left), the second side and front surfaces (top right), the top and rear surfaces (bottom left), and the bottom surface (bottom right) of the external enclosure of the MMO12S3AST microwave.[16]





[16] *Id.*; https://www.midea.com/content/dam/midea-aem/us/microwaves/mmo12s3ast-/MMO12S3AST-User-Manual.pdf (last visited Oct. 29, 2026) at 19.






83. Each Accused Product comprises "a cooking cavity disposed within the external enclosure, wherein the cooking cavity is defined by a plurality of cavity walls that extend between a top cavity wall and a bottom cavity wall." The MMO12S3AST has a cooking cavity inside the external enclosure. The cavity is defined by a top cavity wall, a bottom cavity wall, and side and rear cavity walls extending between them. The below images show the MMO12S3AST's cooking cavity.







84. Each Accused Product comprises "a door coupled with the external enclosure for selectively closing an opening into the cooking cavity, wherein in a closed position, the door extends from a bottom plane defined by the bottom surface of the external enclosure to a top plane defined by the top surface of the external enclosure." The MMO12S3AST has a door coupled with the external enclosure that opens and closes the opening into the cooking cavity. When closed, the top of the door is coplanar with the top surface of the enclosure, and the door extends down to the plane defined by the bottom surface of the enclosure. The below images from Midea's website show the MMO12S3AST's door both slightly open and fully closed, where in a closed position, the door is coplanar with the top and bottom surfaces of the external enclosure.[17]





85. Each Accused Product comprises "a magnetron disposed within a cooking component area defined within the external enclosure, wherein the cooking component area is laterally adjacent to the cooking cavity and extends from the cooking cavity to the second side surface of the external enclosure." The MMO12S3AST has a magnetron located in a cooking component area inside the external enclosure. That area sits beside the cooking cavity and extends from the cavity to the right (here, the second) side surface of the enclosure. The below image shows the MMO12S3AST's cooking components, including the magnetron, located within a cooking

[17] https://www.midea.com/us/store/microwaves/over-the-range/midea-over-the-range-microwave.mmo12s3ast (last visited Oct. 29, 2026).

component area laterally adjacent to the cooking cavity, between the cooking cavity and the right side surface of the external enclosure (removed).



86. Each Accused Product comprises "a cooling fan configured to drive a cooling airflow through the cooking component area to cool the magnetron." The MMO12S3AST has a cooling fan oriented and positioned to draw air through the cooling air inlet and drive it across the cooking component area, including the magnetron, to cool those components, before the air passes through the cooking cavity and out the cooling air outlet. The below image shows the cooling fan in white.



87. Each Accused Product comprises "at least one ventilation inlet located at the bottom surface of the external enclosure." The bottom surface of the MMO12S3AST's external enclosure includes at least one ventilation inlet, through which air from the cooktop below is drawn into the product. The below image of the MMO12S3AST shows two vent inlets located on the bottom surface of the external enclosure.



88. Each Accused Product comprises "at least one air outlet located at the top plane between a front edge of the top surface and a rear edge of the top surface." The top surface of the

MMO12S3AST's external enclosure defines several air outlets, including recirculation vent outlets, an outside venting outlet, and a cooling air outlet. These outlets are defined on the top surface between its front edge and its rear edge. The below image shows the MMO12S3AST's various air outlets.[18]



89. Each Accused Product comprises "a ventilation passage extending from the at least one ventilation inlet and between the external enclosure and the cooking cavity." In the MMO12S3AST, air drawn in through the ventilation inlets travels through a passage that runs from those inlets through the space between the external enclosure and the cooking cavity, toward the recirculation vent outlets in recirculation mode and toward the outside venting outlet in outside venting mode.

90. Each Accused Product comprises "a hood fan assembly disposed within the external enclosure and outside the cooking cavity, wherein the hood fan assembly is in fluid communication with the ventilation passage." The MMO12S3AST has a hood fan assembly

---

[18] The vent at the lower right of this image is the cooling-air *inlet*, not an outlet.

located inside the external enclosure and outside the cooking cavity. The hood fan draws air through the ventilation inlets and the ventilation passage, and expels it through the vent outlets, so it is in fluid communication with the ventilation passage. The below image of the MMO12S3AST shows the hood fan within the ventilation passage.



91. Accordingly, each Accused Product meets every limitation of claim 1 of the ’131 patent, either literally or, in the alternative, under the doctrine of equivalents, because any difference between the claimed structure and the Accused Products is insubstantial, and the Accused Products perform substantially the same function, in substantially the same way, to achieve substantially the same result.

92. Upon information and belief, Midea currently actively induces and has induced infringement of the ’131 patent pursuant to 35 U.S.C. § 271(b) through, among other things, actively encouraging others to make, use, import, offer for sale, and/or sell in this judicial district and elsewhere in the United States the Accused Products.

93. For example, as shown above, Midea actively promotes the sale, use, and importation of the Accused Products in marketing materials, product manuals, and web pages on its website, and through its sales and distribution channels that encourage infringing sales, offers to sell, and importation of the Accused Products.

94. Upon information and belief, Midea has had knowledge of the ’131 patent and that the Accused Products infringe the asserted claim of the ’131 patent and learned of this at least from the filing of this Complaint. Contemporaneously with the filing of this Complaint, Whirlpool provided Midea with a copy of the Complaint and exhibits to the Complaint. As a result, Midea received notice of the ’131 patent and the infringement at issue no later than the filing of the Complaint. By the time of trial, Midea will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce the infringement of the ’131 patent.

95. Upon information and belief, Midea’s infringement of the ’131 patent has been and continues to be willful.

96. Upon information and belief, Midea knew of the ’131 patent or was willfully blind to its existence.

97. Midea’s infringement of the ’131 patent has been without permission, consent, authorization, or license from Whirlpool.

98. As a result of Midea’s infringement, Whirlpool has suffered and will continue to suffer damages, including past damages, in an amount to be proved at trial. In addition, Midea’s infringement caused and will continue to cause Whirlpool irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court:

A. Adjudge that Midea has infringed and is infringing one or more claims of each of the Asserted Patents, directly and/or indirectly, literally, and/or under the doctrine of equivalents;

B. Award damages, including past damages, sufficient to compensate Plaintiff for Midea’s infringement under 35 U.S.C. § 284, including an award of treble damages for willful infringement;

C. Find this case exceptional under 35 U.S.C. § 285, and award Plaintiff its reasonable attorneys' fees;

D. Enjoin Midea, and all persons in concert or participation with it, from directly or indirectly infringing one or more claims of each of the above Asserted Patents, directly and/or indirectly, literally, and/or under the doctrine of equivalents;

E. Award Plaintiff its costs and expenses incurred in this action;

F. Award Plaintiff pre-judgment and post-judgment interest; and

G. Grant Plaintiff such further relief as the Court deems just and appropriate.

Dated: November 5, 2026

By: */s/ Rex A. Mann*
Rex A. Mann
State Bar No. 24075509
Matthew Reilly
State Bar No. 24149334
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
Telephone: (214) 764-4600
rmann@kslaw.com

Brian E. Ferguson
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, DC 20006
Telephone: (202) 737-0500
bferguson@kslaw.com

Robert T. Vlasis III
State Bar No. 24056475
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO PC
555 12th Street NW, Suite 1100
Washington, DC 20004
Telephone: (202) 434-7430
RVlasis@mintz.com

*Attorneys for Plaintiff*
*Whirlpool Corporation*

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury of all claims so triable.

Dated: November 5, 2026

By: */s/ Rex A. Mann*

Rex A. Mann
State Bar No. 24075509
Matthew Reilly
State Bar No. 24149334
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
Telephone: (214) 764-4600
rmann@kslaw.com
mreilly@kslaw.com

Brian E. Ferguson
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, DC 20006
Telephone: (202) 737-0500
bferguson@kslaw.com

Robert T. Vlasis III
State Bar No. 24056475
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO PC
555 12th Street NW, Suite 1100
Washington, DC 20004
Telephone: (202) 434-7430
RVlasis@mintz.com

*Attorneys for Plaintiff*
*Whirlpool Corporation*